541 P.2d 628
STATE of New Mexico, Plaintiff-Appellee,

v.

Frank R. GUTIERREZ, Defendant-Appellant.

Nos. 1955 and 2047.

Court of Appeals of New Mexico.

Oct. 7, 1975.

Chester H. Walter, Jr., Chief Public Defender, Bruce L. Herr, App. Defender,

Reginald J. Storment, Asst. App. Defender, Santa Fe, for defendant-appellant.

Toney Anaya, Atty. Gen., Jay F. Rosenthal, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Convicted of murder in the second degree, defendant appeals. The issues concern: (1) the sufficiency of the indictment, and (2) refused instructions on · (a) insanity; (b) intoxication; and (c) manslaughter.

*Sufficiency of the Indictment*

The indictment charged defendant with murder in the first degree. Defendant claims the indictment was void because he was charged under our general murder statute rather than under a specific statute which covered his crime. The general murder statute is § 40A–2–1, N.M.S.A.1953 (2d Repl.Vol. 6). The alleged specific statute is § 40A–6–1(C), N.M.S.A. 1953 (2d Repl.Vol. 6, Supp.1973). Section 40A–6–1(C), supra, pertains to abuse of a child which results in the child's death. The essence of defendant's claim is that in any homicide within the child abuse statute, the killer cannot be tried for first degree murder.

*State v. Blevins,* 40 N.M. 367, 60 P.2d 208 (1936) holds that for the specific statute to apply, the specific and general statute must condemn the same offense. Or, as stated in *State v. Riley,* 82 N.M. 235, 478 P.2d 563 (Ct.App.1970), the same proof is required under either the specific or general statute.

The offense of murder and the offense of child abuse resulting in the child's death are not the same. Nor is the same proof required for the two offenses. Generally speaking, murder requires an intent. See N.M.U.J.I. Criminal, committee commentaries to instructions 2.00 through 2.11. Child abuse does not require an intent. *State v. Lucero,* 87 N.M. 242, 531 P.2d 1215 (Ct.App.1975). There is no basis for

application of the specific versus general statute rule; the indictment was not void.

*Refused Instructions*

Defendant and his wife were having marital difficulties. ˙ In a telephone conversation, his wife told him that she was leaving him. Defendant replied that if she did he would kill himself and the children. After the telephone conversation, defendant kissed his young daughter, picked up his baby boy and slammed the boy's head against the coffee table twice. The baby's injuries were extensive and fatal. There is evidence that defendant has sniffed paint for a number of years and had been sniffing paint over a period of three days before killing his baby boy.

(a) *Insanity*

 Defendant requested an instruction on defendant's insanity at the time of commission of the offense. He claims the trial court erred in refusing the request, asserting "there was evidence of insanity, both expert and lay".

For insanity to exist, there must be a disease of the mind. *State v. Chambers,* 84 N.M. 309, 502 P.2d 999 (1972); *State v. White,* 58 N.M. 324, 270 P.2d 727 (1954). *White* states:

" . . . the insanity of which we speak does not comprehend an insanity which occurs at a crisis and dissipates thereafter. The insanity of which we speak is a true disease of the mind, normally extending over a considerable period of time, as distinguished from a sort of momentary insanity arising from the pressure of circumstances."

*State v. Nagel,* 87 N.M. 434, 535 P.2d 641 (Ct.App.1975) points out that mental disease includes an abnormal condition of the mind which substantially affects mental or emotional processes and substantially impairs behavior controls.

The opinion testimony of lay witnesses was admissible on the question of insanity. *State v. Lujan,* 87 N.M. 400, 534 P.2d 1112

(1975). Their testimony was to the effect that defendant was mentally disturbed, that when committing the offense defendant did not act, or look, normal. Defendant testified that he sniffed paint during periods of stress and when upset, that when he sniffed: "You don't know what you're doing . . . you're not here in the world, you go off on trips." This evidence was insufficient to raise a factual issue concerning true disease of the mind and was insufficient to raise a factual issue concerning a substantial impairment of behavior controls. *State v. Nelson,* 83 N.M. 269, 490 P.2d 1242 (Ct.App.1971); compare *State v. Velasquez,* 76 N.M. 49, 412 P.2d 4 (1966), cert. denied, 385 U.S. 867, 87 S.Ct. 131, 17 L.Ed.2d 95 (1966).

The psychiatrist testified that defendant had no organic brain damage and that he found no evidence of psychological damage. He testified that defendant' history of paint sniffing included instances when defendant would become violent and "feel that devils were chasing him". However, in connection with the killing of the baby boy, the psychiatrist was of the opinion defendant knew what he was doing when he did it; that it was an impulsive act. This evidence was insufficient to raise a factual issue concerning a true disease of the mind and insufficient to raise a factual issue as to substantial impairment of behavior controls. See *State v. Velasquez,* supra.

The trial court did not err in refusing the requested insanity instruction. Compare *State v. Madrigal,* 85 N.M. 496, 513 P.2d 1278 (Ct.App.1973); *State v. Follis,* 81 N.M. 690, 472 P.2d 655 (Ct.App.1970); *State v. Lucero,* 78 N.M. 659, 436 P.2d 519 (Ct.App.1968).

(b) *Intoxication*

 Defendant requested instructions to the effect that if defendant was so intoxicated (from the paint sniffing) that he was incapable of malice, he could not be guilty of murder in the second degree. The requests were correctly refused for

the reasons stated in *State v. Tapia,* 81 N. M. 274, 466 P.2d 551 (1970). He claims the *Tapia* rule presents "serious federal constitutional questions" and his argument is that due process was violated in refusing an instruction that intoxication would negate malice. The trial court refused the instructions on the basis of New Mexico law. No constitutional claim was raised in the trial court. It will not be considered for the first time on appeal. Section 21–12–11, N.M.S.A.1953 (Interim Supp.1974).

### (c) *Manslaughter*

 Defendant requested instructions on manslaughter as a lesser included offense. The right to instructions on lesser included offenses depends on there being some evidence tending to establish the lesser offenses. *State v. Wingate,* 87 N.M. 397, 534 P.2d 776 (Ct.App.1975).

The manslaughter statute is § 40A–2–3, N.M.S.A.1953 (2d Repl.Vol. 6). Voluntary manslaughter requires a killing "upon a sudden quarrel or in the heat of passion." There is no evidence that such a condition existed between defendant and his baby boy. The only evidence of quarrel or heat of passion is between defendant and his wife. Defendant states, without citation: "The weight of authority is against allowing transferrance of one's passion from the object of the passion to a related bystander, however." We accept this statement. There was no evidence tending to establish voluntary manslaughter.

Involuntary manslaughter requires a killing either "in the commission of an unlawful act not amounting to felony; or in the commission of a lawful act which might produce death . . . ." Inflicting a beating is an unlawful act. *State v. Holden,* 85 N.M. 397, 512 P.2d 970 (Ct.App. 1973). Accordingly, there is no basis for an instruction on involuntary manslaughter by lawful act. It is not seriously contended that defendant's unlawful act did not amount to a felony. Accordingly, there is no basis for an instruction on involuntary manslaughter by unlawful act not amounting to a felony.

The trial court did not err in refusing the requested manslaughter instructions.

Oral argument is unnecessary. The judgment and sentence are affirmed.

It is so ordered.

HENDLEY and LOPEZ, JJ., concur.